IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


FELICIA SOTEROS,                                    No. 3:15-cv-00871-HZ

                    Plaintiff,                       OPINION & ORDER

        v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293

        Attorney for Plaintiff

Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

David J. Burdett
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

  Attorneys for Defendant


HERNÁNDEZ, District Judge:

  Plaintiff Felicia Soteros brings this action for judicial review of the Commissioner's final

decision denying her application for Supplemental Security Income (SSI) under Title XVI of the

Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42

U.S.C. § 1382(c) (3)). The Commissioner's decision is reversed and remanded for a

determination of benefits.

## PROCEDURAL BACKGROUND

  Plaintiff applied for SSI on September 9, 2011, alleging an onset date of July 19, 2007.

Tr. 176.[1] Her application was denied initially and on reconsideration. Tr. 89, 110. On August 2,

2013, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ).

Tr. 36-58. On August 21, 2013, the ALJ found Plaintiff not disabled. Tr. 30. The Appeals

Council denied review. Tr. 1.

## FACTUAL BACKGROUND

  Plaintiff alleges disability based on severe systemic lupus erythematosus (SLE); severe

chronic pain syndrome; depression; hearing and speech impairment; restless leg syndrome; loss

of feeling in legs, arms, and head; and lung damage due to blood clots. Tr. 196. She has not

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record,
filed herein as Docket No. 14.

worked since 2007. Tr. 186. She has limited past experience as a housekeeper in a hotel and as a sign waver for a tax service. Tr. 210.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See, e.g., Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot

perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 29, 2011, the application date. Tr. 21. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: systemic lupus erythematous (SLE), hearing impediment, and fibromyalgia. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 22. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), except that Plaintiff cannot climb ladders, ropes, or scaffolds. Id. She can frequently climb ramps and stairs, balance, stoop, crouch, and crawl. Id. She cannot perform work that requires excellent hearing. Id. at 22-23. She must avoid even moderate exposure to loud noises. Id. at 23. She should have no exposure to sunlight. Id. She requires a sit-stand option every 30 minutes, without an interruption of the work process. Id. She must avoid concentrated exposure to respiratory irritants (such as fumes, odors, dusts, and gases), and workplace hazards (such as machinery and heights). Id.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th

Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) rejecting the opinion of Plaintiff's medical sources; (2) rejecting Plaintiff's impairments as non-severe at step two; (3) failing to find that Plaintiff's impairments meet a "listed impairment"; (4) improperly analyzing lay witness statements; (5) conducting an improper credibility evaluation; and (6) failing to conduct an adequate analysis at step five. Plaintiff asks this Court to remand the case for an award of benefits.

Defendant concedes that the ALJ did not properly evaluate the severity of Plaintiff's mental impairments. Accordingly, Defendant concedes that this case should be remanded. However, Defendant contends that remand for further proceedings, not for payment of benefits,

is the appropriate remedy. Defendant argues that "[t]he record does not clearly warrant a finding of disability and leaves issues unresolved." Def.'s Br. 10, ECF 20.

## I.    Medical Opinions

a)   Treating physician Andre Barkhuizen, MD

Dr. Barkhuizen is a rheumatologist who has treated Plaintiff since December of 2007. Tr. 624. In July 2013, he provided a medical opinion to Plaintiff's counsel, affirming the representation that Plaintiff has the following medical conditions: severe SLE, severe chronic pain syndrome, depression, hearing/speech impairment, restless leg syndrome, loss of feeling in legs, arms and head, and lung damage due to blood clots. Tr. 624. In addition, Dr. Barkhuizen opined that Plaintiff also suffers from hypercoagulable state with chronic pulmonary emboli. Id. He listed her primary symptoms as pain, fatigue, photosensitivity, skin rash, headaches, and dizziness. Id.

Dr. Barkhuizen opined that Plaintiff faces many limitations in her ability to perform functions on an ongoing basis during an eight-hour workday and five-day workweek. Specifically, due to chronic pain and a lack of energy, Dr. Barkhuizen stated that Plaintiff can never engage in any of the following: climbing, balancing, stooping/bending, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Tr. 626. Plaintiff can stand and/or walk for 30 minutes at a time and for one hour in an eight-hour workday. Id. She can sit for two to three hours at a time and for three hours in an eight-hour workday. Id. In an eight-hour day, she would need to sleep, rest, and move around, in addition to sitting, standing, and walking. Id.

Dr. Barkhuizen found that Plaintiff experiences photosensitivity to light due to SLE and suffers from fibromyalgia. Tr. 625. Furthermore, her medications cause fatigue, weight gain,

frequent infections, and muscle weakness. Tr. 627. Dr. Barkhuizen opined that Plaintiff would

not be able to perform 20% of a standard workweek and that she would miss the equivalent of

two days of work per month due to her impairments, symptoms, medications, and side effects.

Id.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and

(3) nonexamining. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v.

Chater, 81 F.3d 821, 830 (9th Cir. 1996). Generally, more weight is given to the opinion of a

treating physician than to the opinion of those who do not actually treat the claimant. Id.; 20

C.F.R. §§ 1527(c)(1)-(2), 416.927(c)(1)-(2).

If the treating physician's medical opinion is supported by medically acceptable

diagnostic techniques and is not inconsistent with other substantial evidence in the record, the

treating physician's opinion is given controlling weight. Orn v. Astrue, 495 F.3d 625, 631 (9th

Cir. 2007); Holohan, 246 F.3d at 1202. If a treating physician's opinion is not given "controlling

weight" because it is not "well-supported" or because it is inconsistent with other substantial

evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion

under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2); Orn, 495 F.3d at 631.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear

and convincing reasons that are supported by substantial evidence. If a treating or examining

doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

providing specific and legitimate reasons that are supported by substantial evidence." Bayliss v.

Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

In his opinion, the ALJ gave "very limited weight" to Dr. Barkhuizen's opinion. Tr. 27.

The ALJ found that the longitudinal record, including Dr. Barkhuizen's own progress notes, "did

not support the extreme limitations" that Dr. Barkhuizen proposed. Id. According to the ALJ, Dr. Barkhuizen's notes "repeatedly describe [Plaintiff] as exhibiting normal physical functioning." Id. "They also include his assessments that her SLE has been well controlled with medications." Id.

Defendant concedes that the ALJ failed to properly consider Dr. Barkhuizen's opinion as to the severity of Plaintiff's mental impairments, such as impairments of Plaintiff's attention and concentration due to various medications. However, Defendant contends that the ALJ correctly weighed Dr. Barkhuizen's opinion regarding Plaintiff's physical impairments.

The Court finds that the ALJ's recitation of boilerplate language finding that "the longitudinal record . . . [does] not support the extreme limitations" proposed by Dr. Barkhuizen does not form a substantive basis for his decision to afford little weight to the doctor's opinion. See Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) (finding error when an ALJ assigns a medical opinion little weight while doing nothing more than "criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"). Other than this boilerplate statement, the only reason the ALJ gives to discount Dr. Barkhuizen's opinion is that the opinion is contradicted by Dr. Barkhuizen's own notes. However, a close look at the record reveals that the ALJ selected portions of Dr. Barkhuizen's progress notes that were not representative of Dr. Barkhuizen's records, taken as a whole. While the ALJ found that Dr. Barkhuizen's notes "repeatedly describe the claimant as exhibiting normal physical functioning," Tr. 27, he only cited to two specific progress notes in his opinion.

First, the ALJ highlighted Dr. Barkhuizen's notes from July 2011, where he stated that her lab results from the previous March were "entirely normal," her joints were feeling better in the warmer weather, she denied side effects from current medications, and she was only having

photosensitive rashes on her extremities, not on her ear canals or face. Tr. 23 (citing Tr. 364-65). Dr. Barkhuizen wrote that Plaintiff's SLE was "stable other than photosensitivity and edema from heat exposure with reassuringly normal labs on Imuran and Plaquenil and off prednisone." Tr. 365. Second, the ALJ cited a progress note from May 2013. Tr. 24 (citing Tr. 628-29). Dr. Barkhuizen wrote that Plaintiff's SLE remained stable on her current medication regime and that she had some blotchy redness on her cheeks from sun exposure, but it had resolved upon returning home. Id. Because the ALJ only referred specifically to Dr. Barkhuizen's progress notes from July 2011 and May 2013, there is no indication that he considered the extensive record of notes in the time frame between those two dates.

The additional notes not cited by the ALJ notes present a different portrayal of Plaintiff's recurring symptomology from SLE, fibromyalgia, and chronic pain. In April of 2012, Dr. Barkhuizen noted that the "sunnier weather" had caused increased photosensitivity and that Plaintiff's mother had taken measures such as installing blackout curtains in the home and removing the skylight in the kitchen. Tr. 641. Plaintiff wore high SPF sun creams and clothes with UV protection. Id. As to pain, while Dr. Barkhuizen wrote that Plaintiff's SLE was stable, he also noted that Plaintiff had chronic fibromyalgia and neck pain. Tr. 641-42.

In July of 2012, Dr. Barkhuizen's notes describe persistent photosensitivity, lupus rashes, marked livedo reticularis of her extremities, numbness, buzzing sensations, stabbing pains, and ongoing bruising. Tr. 638. In September of 2012, Dr. Barkhuizen described the July visit as a "very prominent and systemic flareup with all over pain, electric shocklike sensations and lupus rashes all over her face and extremities." Tr. 636.

In November of 2012, Dr. Barkhuizen noted that Plaintiff's pain had increased with the cold weather. He wrote that Plaintiff's SLE was chronic and that her photosensitivity indoors had

"somewhat improved" by changing out the light sources at home to reduce UV exposure. Tr. 634-35. In January of 2013, Dr. Barkhuizen noted that Plaintiff was "hurting all the time." Tr. 633. Her SLE was stable, although Dr. Barkhuizen noted low-grade inflammation. Id. Plaintiff's chronic pain continued and Plaintiff had "multiple somatic complaints." Id. In March of 2013, Dr. Barkhuizen noted Plaintiff's "widespread pain and tenderness." Tr. 630.

In sum, the ALJ's finding that Dr. Barkhuizen's opinion was contradicted by his own treatment notes is not supported by substantial evidence. Furthermore, the ALJ failed to acknowledge that no other treating or examining physician disagreed with Dr. Barkhuizen. The only physician who offered a different opinion regarding Plaintiff's ability to work was Dr. Neal Berner, a non-examining physician. The opinion of an examining physician is entitled to greater weight than that of a non-examining physician, Garrison, 759 F.3d at 1012, and the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining physician, Lester, 81 F.3d at 831. Furthermore, because Dr. Barkhuizen is a specialist, his opinion is owed greater weight as a matter of regulation. 20 C.F.R. § 404.1527 ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). In sum, the ALJ erred in failing to credit Dr. Barkhuizen's opinion.

  b)  Treating nurse practitioner Darcy Butcher, FNP, and treating physician Timothy Gray, D.O.

Darcy Butcher, FNP, treated Plaintiff for primary care for three years as of July of 2013. Timothy Gray, D.O., was Plaintiff's treating physician. In July of 2013, Ms. Butcher and Mr. Gray provided a medical opinion, using the same form that Plaintiff's counsel provided to Dr.

Barkhuizen, opining that Plaintiff was "unable to work due to multiple conditions and medications needed for those conditions." Tr. 970.

Nurse Butcher and Dr. Gray stated that Plaintiff has the following medical conditions: severe systemic lupus erythematous, severe chronic pain syndrome, depression, hearing/speech impairment, restless leg syndrome, loss of feeling in legs, arms and head. Tr. 967. In addition, they opined that Plaintiff suffers from anxiety, depression, asthma, diabetes, and a clotting disorder. Id. They listed her primary symptoms as chronic pain, paresthesia, fatigue, skin rash, and depression. Id.

Nurse Butcher and Dr. Gray opined that Plaintiff faces many limitations in her ability to perform functions on an ongoing basis during an eight-hour workday and five-day workweek. Specifically, due to sensory deficits and pain, they stated that Plaintiff can never engage in any of the following: climbing, balancing, kneeling, crouching, crawling, reaching overhead, fingering, and feeling. Tr. 969. Plaintiff can only occasionally engage in stooping/bending, reaching at shoulder height, and handling. Id. Plaintiff can stand and/or walk for 30 minutes at a time and for three hours in an eight-hour workday. Id. She can sit for thirty minutes at a time and for three hours in an eight-hour workday. Id. Due to pain, in an eight-hour day, she would need to lay down, in addition to sitting, standing, and walking. Id. They opined that, in a standard workweek, Plaintiff would not be able to perform even simple tasks because of impairments to her attention and concentration. Tr. 970.

In his opinion, the ALJ gave "very limited weight" to Nurse Butcher's and Dr. Gray's opinion. Tr. 27. As with Dr. Barkhuizen, the ALJ used boilerplate language to find that the longitudinal record did not support their assessment. Id. In addition, the ALJ stated that recent notes from Nurse Butcher include Plaintiff's "report that her pain was well controlled on her

current medication regime, and that the doses of the individual drugs had not been changed in three years." Id.

As to Dr. Gray, the ALJ provides a short summary of some of Dr. Gray's progress notes and then writes: "For reasons discussed throughout this decision, including the brief summary directly above, I find that the longitudinal record does not support Dr. Gray's assessment and his opinion receives very limited weight." Tr. 28.

Once again, the ALJ must do more than state conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Garrison, 759 F.3d at 1012. He cannot simply criticize a medical opinion with boilerplate language that fails to offer a substantive basis for his conclusion. Id. at 1013. Simply describing Nurse Butcher's note, without explaining why it forms the basis to disregard her opinion, is not enough; nor is a general statement that Dr. Gray's assessment is not supported by the record.

## II.    Listing 14.02

Plaintiff also contends that the ALJ erred in concluding, at step three, that her SLE did not meet or medically equal a listed impairment, 20 C.F.R. 404, Subpt. P, App. 1, 14.02. At step three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal those in the Listings. See § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.1999). The List describes the characteristics of each impairment. The description includes the "symptoms, signs and laboratory findings" that make up the characteristics of each listed impairment. 20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. Tackett, 180 F.3d at 1099. Listed impairments are those that are "so severe that

they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." <u>Lester</u>, 81 F.3d at 828.

The claimant has the initial burden of proving that an impairment meets or equals a Listing. <u>See</u> <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530–33 (1990). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." <u>Tackett</u>, 180 F.3d at 1099.

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir.2001). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." <u>Id.</u> The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding that ALJ did not err in failing to state what evidence supported conclusion that claimant's impairments did not satisfy Listing). An ALJ's decision that a plaintiff did not meet a Listing must be upheld if it was supported by "substantial evidence." <u>See</u> <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006).

Systemic lupus erythematosus (SLE) is a listed impairment. To meet Listing 14.02, a claimant must produce objective medical evidence of a diagnosis of SLE, with:

A. Involvement of two or more organs/body systems, with:

1. One of the organs/body systems involved to at least a moderate level of severity; and
2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

or

B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.
2. Limitation in maintaining social functioning.
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § 404, Subpart P, App. 1, 14.02.

Here, in concluding that Plaintiff does not have an impairment that meets a listing

requirement, the ALJ wrote:

> I reviewed 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments) and find that the claimant's impairments, when considered singly, and in combination, do not meet or medically equal the criteria for any impairment in the Listing of Impairments. For reasons discussed in this decision, the objective medical evidence does not support a finding of disability under the Immune System and Special Senses and Speech Listing.

Tr. 22. The ALJ does not explain why he found that Plaintiff's impairment did not meet the

Listing 14.02 requirements.

Dr. Barkhuizen, Nurse Butcher, and Dr. Gray all opined that Plaintiff met both Listing

14.02(A) and 14.02(B). Tr. 625, 968. In particular, for 14.02(B), Dr. Barkhuizen found that

Plaintiff had repeated manifestations of SLE with limitation of activities of daily living and

limitation in completing tasks in a timely manner due to deficiencies in concentration,

persistence, and pace. Tr. 625. As discussed above, the ALJ erred in not crediting these medical

opinions. When credited, they establish that Plaintiff meets the Listing requirements and, thus, is

disabled.

## III.    Lay Witness Statement

Plaintiff's mother, Jennifer Sena, provided a written Third Party Function Report dated

September 29, 2011. Tr. 218-225. Plaintiff lives with her mother and thus, Ms. Sena has

firsthand knowledge of Plaintiff's daily activities. Ms. Sena described Plaintiff as needing to

sleep or stay in the dark all day due to her lupus. Tr. 219. She is constantly in pain. Id. She does

few chores because everything either hurts too much or triggers one of her conditions. Tr. 220. Ms. Sena contrasted Plaintiff's current abilities with what she could do in the past. For example, she used to draw but she does not anymore because it hurts her hands. Tr. 222. She used to shop for food and cook, but not she cannot be in the kitchen for long because the skylight lets light enter that bothers her. Tr. 220. She used to have several friends but her social world has narrowed to the "few people who can deal with her weird schedule," as well as people Plaintiff meets online. Tr. 222.

Ms. Sena opined that Plaintiff is trying to "sleep away her pain." Tr. 224. Although Plaintiff can drive, she prefers that her mother accompany her out because she is hearing impaired. Tr. 221. It hurts Plaintiff to stand in the shower long enough to get clean, and so she will go up to a week without showering. Tr. 219. Her medications cause her drowsiness and bowel imbalance. Tr. 224. Plaintiff's blood gets thin. Id. Her medication also affects her memory and comprehension. Id.

Ms. Sena concludes by stating: "Felicia cannot live alone because her lungs can fill with clots overnight if her meds get off. When she wakes up she moves like an 80 yr. old woman because she is so hunched and tight against the pain. If you could only spend a day in the life of Felicia, you would see that she has such a low quality of life. She wants to be able to function, but she just can't." Tr. 225.

The ALJ found that Ms. Sena's statement alleged that Plaintiff had limitations that were greater than described in Plaintiff's own statement and that such limitations were not supported by the objective medical evidence. Tr. 28. However, the ALJ also wrote that "Ms. Sena's statement is generally consistent with the claimant's allegations." Id. The ALJ noted that even if he accepted Ms. Sena's statements as true, Plaintiff's limitations would not preclude her from

working jobs consistent with the RFC. Id. In sum, the ALJ wrote: "I find Ms. Sena's statement to be of limited value in arriving at a determination of the claimant's overall residual functional capacity." Tr. 28.

Plaintiff argues that the ALJ ignored substantial amounts of relevant medical information and, further, rejected Ms. Sena's opinion through a "blanket assertion that the record does not support [her] testimony." Pl. Brief 15, ECF 15. Defendant counters that the ALJ provided germane reasons for discounting Plaintiff's testimony; specifically, that the limitations described were greater than Plaintiff's own statements and were inconsistent with the medical evidence.

The Court compared Ms. Sena's statement with that of Plaintiff and fails to see a degree of inconsistency that would comprise substantial evidence for disregarding Ms. Sena's statement. The ALJ did not cite to any particular inconsistency, nor does Defendant.

As to the alleged inconsistencies with the medical evidence, as addressed above, the Court finds that the ALJ failed to consider large portions of the medical evidence. Taken as a whole, the medical evidence does not contradict Ms. Sena's statement. Accordingly, the ALJ erred in assigning Ms. Sena's statement little weight.

## IV.    Plaintiff's Credibility Evaluation

The ALJ is responsible for determining credibility. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. Carmickle v. Comm'r, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse

credibility finding must be based on 'clear and convincing reasons'"); <u>see also</u> <u>Molina v. Astrue</u>,

674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility:

First, the ALJ determines whether there is "objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged";

and second, if the claimant has presented such evidence, and there is no evidence of malingering,

the ALJ must then give "specific, clear and convincing reasons in order to reject the claimant's

testimony about the severity of the symptoms.") (internal quotation marks omitted).

The ALJ found Plaintiff "not entirely credible for the reasons explained in this decision."

Tr. 23. The Court finds only two such reasons cited by the ALJ in the decision: (1) "[t]he record

generated since June 23, 2010, the date of the prior ALJ decision, does not support the claimant's

allegations of disability"; and (2) the alleged inconsistency between Plaintiff's testimony and her

reported activities of daily living. Tr. 23, 26.

The ALJ cites two chart notes from the record that supposedly conflict with Plaintiff's

allegations of disability. The Court has already explained how the first note, Dr. Barkhuizen's

chart note from July 2011, cannot be taken in isolation as an accurate representation of the

medical record as a whole. The second note, from May 2011, states that Plaintiff alleged "fairly

significant paresthesia in her hands and feet, and concentration problems caused by her

medications." Tr. 24, 511. The ALJ contends that this note is inconsistent with Plaintiff's

"current objective presentation and self-reports." Tr. 24. However, a chart note from March of

2013 (just a few months before the administrative hearing) indicates that Plaintiff reported

"random numbness," paresthesia, and vibration, Tr. 922, and Defendant concedes that several

medical sources noted that Plaintiff's attention and concentration were impaired because of

various medications, Def.'s Br. 5, ECF 20. Therefore, the ALJ's conclusion that the medical record conflicted with Plaintiff's allegations is not supported by substantial evidence.

As to Plaintiff's reported activities of daily living, the ALJ notes that, in a written statement, Plaintiff said she could do the following: prepare meals daily; perform household chores such as laundry, watering plants, and feeding pets; walk; drive; and shop. Tr. 26. Plaintiff stated that her hobbies were reading, drawing, word puzzles, spending time with friends, and watching television. Id. She attended parties at friends' houses and would occasionally "DJ" for them. Id. She occasionally went to a local tavern and sang karaoke, and occasionally visited a friend's lake house. Id. The ALJ also cited Plaintiff's testimony, in which she stated that she sleeps most of the day. Id. At night, Plaintiff cooks, does "light exercise," plays with her dog, spends time on the computer, and gets together with family or friends. Id. The ALJ concluded that, "[w]hen viewed in the aggregate, the claimant's reported activities do not appear to be limited to the degree one would expect, given her allegations of total disability." Id.

The ALJ failed to identify any specific part of Plaintiff's testimony that is contradicted by her reported activities of daily living. In addition, the ALJ mischaracterized Plaintiff's testimony. Throughout Plaintiff's written function report, she repeatedly emphasized that her ability to do chores and activities was dependent on her level of pain and fatigue. For example, Plaintiff stated that in the evenings she spends time with her friends if she can and if she feels up for it; she takes care of pets but her parents help if she is sick; she cooks but it hurts her back to stand and so she requires breaks; she likes to read, draw, and knit but those activities have become more difficult because her hands cramp with pain; and, generally, she limits her activities and does not get out of the house a lot. Tr. 232-35. At the hearing, she testified that the "light exercise" she performs is in response to pain and a tingling sensation in her face and extremities. Tr. 41.

18 - OPINION & ORDER

The ALJ erred in finding that these activities, if performed in the manner that Plaintiff described, are inconsistent with the pain-related impairments that Plaintiff described in her testimony. The Court agrees with Plaintiff that the Ninth Circuit's explanation in Garrison, 759 F.3d at 1015-16, is applicable here:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day. See, e.g., Smolen, 80 F.3d at 1287 n. 7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," we have held that "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." Reddick v. Chater, 157 F.3d at 722 (citations omitted); see also Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ..., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted)).

As in Garrison, Plaintiff's daily activities, as she described them in her testimony, were consistent with her statements about the impairments caused by her pain. The ability to perform basic household chores, have simple hobbies, and spend time with friends and on the internet, all mainly in the evenings and when she is not in pain or fatigued, is consistent with the pain that Plaintiff described in her testimony. It is also consistent with an inability to function in a workplace environment. Accordingly, as in Garrison, the supposed inconsistencies between Plaintiff's daily activities and her testimony do not satisfy the requirement of a clear, convincing, and specific reason to discredit Plaintiff's testimony regarding her pain-related impairments.

## V.      Residual Functional Capacity

Plaintiff argues that the ALJ erred in failing to conduct an adequate analysis at step five because the hypothetical posed to the vocational expert (VE) did not reflect all of Plaintiff's limitations. As discussed above, the ALJ erred by failing to credit the testimony of Dr. Barkhuizen, Nurse Butcher, and Dr. Gray; accordingly, the ALJ erred by failing to include the limitations assessed by those medical professionals in the hypothetical posed to the VE. If their testimony is properly credited, then Plaintiff's limitations include an inability to perform even simple work tasks at least 20% of the time and a likelihood of missing at least two full workdays per month. Tr. 625, 968.

## VI.     Remand for an Award of Benefits

The Court has found that the ALJ improperly rejected medical testimony as to Plaintiff's physical symptoms and Plaintiff's own testimony and lay witness testimony as to the severity of those symptoms. Furthermore, Defendant concedes that the ALJ did not properly evaluate the severity of Plaintiff's mental impairments, thereby rendering the RFC and subsequent steps of the sequential evaluation incomplete. The Court therefore vacates the ALJ's decision.

The question remains, however, whether to remand the case either for further proceedings or for an award of benefits. See Reddick, 157 F.3d at 728 (decision is within the discretion of the Court). The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant

disabled on remand." Garrison, 759 F.3d at 1020. Even if the "credit-as-true" criteria are met, the court retains the "flexibility" to remand for further proceedings where "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Id. at 1021.

Here, there are two reasons why this Court determines that the case should be remanded for an award of benefits. The ALJ failed to provide legally sufficient reasons for rejecting the medical evidence regarding Plaintiff's physical impairments. Lester, 81 F.3d at 834 ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'"). As discussed above, if the testimony of Dr. Barkhuizen, Nurse Butcher, and Dr. Gray was properly credited, the ALJ would be compelled to find that Plaintiff meets Listing 14.02 and, thus, is disabled. See Reddick, 157 F.3d at 721 (claimant is "conclusively presumed disabled" when an impairment meets a "listed" impairment); 20 CFR § 404.1520(d).

Even if Plaintiff did not demonstrate that she meets the requirements of a listed impairment, the Court would still find her disabled. At the hearing, Plaintiff's attorney asked the VE if a hypothetical individual subject to the limitations noted in Dr. Barkhuizen's, Nurse Butcher's, and Dr. Gray's evaluations would be able to sustain competitive employment. Tr. 56-57. The VE testified that a person with such limitations would not be able to sustain competitive employment. Tr. 56-57. Therefore, if the improperly discounted testimony was credited, the ALJ would be compelled to find that Plaintiff could not perform work available in significant numbers in the national economy. Thus, it is "clear from the record that the ALJ would be required to find the claimant disabled," and there remain no "outstanding issues that must be resolved before a determination of disability can be made." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). Under these circumstances, the Court will remand for a computation of

benefits. <u>Garrison</u>, 759 F.3d at 1023 (remand for award of benefits required where claimant satisfies all three conditions of the credit-as-true rule and careful review of the record discloses no reason to seriously doubt that she is, in fact, disabled).

## CONCLUSION

The Commissioner's decision is reversed and remanded for a determination of benefits.

IT IS SO ORDERED.

Dated this \_\_\_16\_\_ day of \_\_\_May_____, 2016

_____
MARCO A. HERNÁNDEZ
United States District Judge